Neal J. Fialkow (State Bar No. 74385)
LAW OFFICE OF NEAL J. FIALKOW INC.
215 North Marengo Avenue, Third Floor
Pasadena, California 91101
Telephone: (626) 584-6060
Facsimile:  (626) 584-2950
Email: nfialkow@pacbell.net

Aaron C. Gundzik (State Bar No. 132137)
GARTENBERG GELFAND HAYTON
& SELDEN, LLP
801 South Figueroa Street, Ste. 2170
Los Angeles, CA 90017
Telephone: (213) 542-2100
Facsimile:  (213) 542-2101
Email: agundzik@gghslaw.com

Sahag Majarian II (State Bar No. 146621)
LAW OFFICE OF SAHAG MAJARIAN, II
18250 Ventura Boulevard
Tarzana, California 91356
Telephone: (818) 609-0807
Facsimile:  (818) 609-0892
Email: sahagii@aol.com

Attorneys for Plaintiff Steven Ball,
individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN BALL, Plaintiff, individually and on behalf of all others similarly situated | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF 47 U.S.C. § 227; DEMAND FOR JURY TRIAL** |
| vs. | |
| SQUARE, INC., a Delaware Corporation; DOES 1 through 10, | **CLASS ACTION** |
| Defendants. | |

**INTRODUCTION**

1.     This class action is brought to recover damages and obtain injunctive relief for Defendants' violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1] As alleged below, Defendants have engaged in a practice of sending unwanted text messages to the mobile phones of Plaintiff and thousands of others.  Such conduct is prohibited under the TCPA and pursuant to its sub-sections, Plaintiff and the class are entitled to recover damages of no less than $500 per violation and an injunction prohibiting future violations.

**PARTIES**

2.     Plaintiff Steven Ball is an individual and a resident of Stanton, California.

3.     Defendant Square, Inc. ("Square") is a Delaware corporation, whose principal place of business is located in San Francisco, California.

4.     The defendants named herein as Does 1 through 10 are sued by said fictitious names, as their true names and capacities are unknown to Plaintiff.  Plaintiff believes that one or more Doe Defendants are unknown persons or entities that were under contract with Defendant Square to provide marketing or other services related to the text messages at issue.  Plaintiff will amend this Complaint to allege the Doe Defendants' true names and capacities when they are ascertained.  Plaintiff is informed and believes and based upon such information and belief, alleges that each of the Doe Defendants is responsible in some manner for the wrongful conduct alleged herein.

**JURISDICTION**

5.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that it arises under the statutes of the United States.  Plaintiff pleads a violation of 47 U.S.C. § 227.

6.     The Court has personal jurisdiction over Defendants because Defendants reside in California.

---

[1]  Unless otherwise indicated, all statutory references herein are to Title 47 of the United States Code.

1

## VENUE

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Defendant Square resides here.

## INTRADISTRICT ASSIGNMENT

8.      Pursuant to Local Rule 3-4, this action should be assigned to the San Francisco Division of this Court because Defendant Square resides in San Francisco, California.

## COMMON ALLEGATIONS

9.      The Short Message Service ("SMS") or "text" message recently turned 20. In that time, the use of text messaging has increased dramatically.  In 2011 an estimated 73% of adults received and sent text messages, with an estimated 8 trillion text messages being sent.  The average adult receives and sends 500 text messages each month.

10.      Recognizing the importance and prevalence of this form of communication, businesses have began to make more and more use of texting to connect with existing customers and find new ones.  Thus, during the last 20 years, commercial texting has also exploded.  One research estimate suggests that in 2011 alone, 346 billion commercial text messages were sent.  Within a few years, that number is expected to almost double.

11.      Along with the rise of commercial texting, the practice of spam texting has also increased.  According to an industry analyst, spam text messages in the United States increased by 45% in 2011 to 4.5 billion messages.  Thus, like their email and junk fax counterparts such uninvited texts have become an insidious problem.  These messages regularly intrude into our lives invading our privacy and taking up our precious time.

12.      Often consumers must pay to receive this spam.  Consumers must pay their wireless providers for the ability to send and receive such messages.  Wireless providers may also levy a charge per text message or provide their users with a limited number of messages for a set fee.

13.      In 1992, the TCPA was enacted to address the problem of unwanted telephone calls and faxes.  The TCPA prohibits most unwanted automated calls to

1 | residential lines and junk faxes, it also prohibits spam texts like those sent by Defendants to
2 | Plaintiff:

3 | It shall be unlawful for any person within the United States if the recipient is
4 | within the United States -- (A) to make any call (other than a call made for
5 | emergency purposes or made with the prior express consent of the called party)
6 | using any automatic telephone dialing system . . . (iii) to any telephone number
7 | assigned to a . . . cellular telephone service.

8 | 47 U.S.C. § 227(b)(1)(A)(iii).

9 |     14.    Spam text messages violate the TCPA because they are sent using an
10 | "automatic telephone dialing system" without the "prior express consent of the called party."

11 |     15.    The TCPA grants persons a private right of action and allows for the
12 | imposition of injunctive relief and damages equal to the greater of actual damages and $500
13 | for each violation.

14 |     16.    On December 4, 2012 at approximately 6:35 p.m., Defendant Square and Doe
15 | Defendants caused a text message promoting Square's products and services to be sent to
16 | Plaintiff's mobile telephone. The message included an internet link to a merchant receipt for
17 | a transaction to which Plaintiff was not a party. The message falsely indicated that the
18 | receipt was for a payment of $160 and invited Plaintiff to text a response to receive a free
19 | card reader. The text message read:

20 | You paid sk image $160.00.  Receipt: squareup.com/r/oqd7yd6izoiwyrdnmbt7
21 | Reply w/ APP to get a free Mobile Card Reader
22 | Reply w/ HELP for more, std rates apply

23 |     17.    The "receipt" located at the referenced internet link was for a supposed
24 | payment of $160.00 that Plaintiff had made to "sk image" on December 4, 2012 at 6:34 p.m.
25 | Plaintiff was not party to such a transaction. He purchased no products or services from sk
26 | image and did not pay sk image $160.

27 |
28 |

1    18.    The text message that Plaintiff received was from the short code number 778-

2    273. This short code is used by Defendant Square to text receipts. Square's standard

3    customer agreement provides:

4            **23. Usage of Shortcode (778273).**

5            Square will send you real-time receipts via a text message, which you may

6            also use as secondary authentication. Standard message and data rates may

7            apply (check with your carrier). You may start by entering your mobile phone

8            number during a transaction with a Square user, or by opting-in at

9            squareup.com. For help, text HELP to 778273, text STOP to

10           quit.

11   19.    When Plaintiff received the forgoing message, he was in California.

12   20.    On information and belief, this text message was sent using an automatic

13   dialing system.

14   21.    Plaintiff did not give his express consent to receive Defendants' text message

15   before it was sent. Nor, has Plaintiff subsequently consented to receiving text messages

16   from Defendants.

17   22.    The message was not sent for emergency purposes.

18                              **CLASS ALLEGATIONS**

19   23.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 as

20   the representative of a class consisting of all persons to whom Defendants caused text

21   messages to be sent without prior express consent utilizing an automatic dialing system.

22   24.    On information and belief, Defendants caused illegal text messages to be sent

23   to many thousands of persons and entities. The class is so numerous that joinder of all

24   members in impracticable.

25   25.    A class action is the only realistic means for individual members to be

26   compensated for Defendants' violations of the TCPA. The expense to each class member of

27   litigating their claims against Defendants individually effectively precludes class members

28   from obtaining any remedy for Defendants' violations.

1    26.    The following questions of law and fact, among others, are common to the

2  class and predominate over questions affecting only individual members:

3              a.    Whether Defendants caused a large number of unauthorized text

4                    messages to be sent to Plaintiff and others.

5              b.    Whether Defendants' text messages were sent for emergency

6                    purposes.

7              c.    Whether Defendants used an automatic dialing service to send such

8                    messages.

9              d.    Whether Defendants confirmed that the recipients of its text messages

10                   had given Defendants prior express consent.

11             e.    Whether the TCPA applies to text messages.

12             f.    Whether Defendants acted willfully, such that treble damages are

13                   warranted under section 227(b)(3)(B).

14   27.    Plaintiff's claims are typical of the claims of other class members.

15   28.    Plaintiff will fairly and adequately represent the interests of the Class.

16  Plaintiff is represented by competent and experienced counsel and Plaintiff is committed to

17  vigorously pursue his claims and the claims of all class members.

18   29.    In light of the predominance of questions, the expected size of the class and

19  the small amount of damages recoverable by each individual member, a class action is

20  superior to other available methods for fairly and efficiently adjudicating the controversy.

21                        **FIRST CLAIM FOR RELIEF**

22                   **Damages for Violation of the TCPA**

23   30.    Plaintiff incorporates by this reference, as if fully set forth herein, the

24  allegations in paragraphs 1 – 29, above.

25   31.    At a time when Defendants were within the United States, Defendants and

26  their agents caused the above-referenced text message to be sent to Plaintiff and other

27  members of the class.

28

1    32.    When Plaintiff and other class members received the unauthorized text
2    message, they were in the United States.

3    33.    Plaintiff and the class members did not give Defendants express consent to
4    receiving the messages before they were sent.

5    34.    Defendants and their agents used an automatic telephone dialing system to
6    send the messages to Plaintiff and other class members.

7    35.    The messages were sent to Plaintiff's and other class members' cellular
8    telephones.

9    36.    Defendants' conduct was the proximate and actual cause of monetary loss
10   and other damage incurred by Plaintiff and the class members.  Pursuant to section
11   227(b)(3)(B), Plaintiff and the class members are entitled to recover the greater of the
12   amount of their monetary loss or $500 per violation.

13   37.    Defendants willfully and knowingly violated section 227(b).  Accordingly,
14   pursuant to section 227(b)(3),Plaintiff requests that the Court award him and the class treble
15   damages.

16                        **SECOND CLAIM FOR RELIEF**

17                 **Injunctive Relief for Violation of the TCPA**

18   38.    Plaintiff incorporates by this reference, as if fully set forth herein, the
19   allegations in paragraphs 1 – 37, above.

20   39.    Pursuant to Section 227(b)(3)(A), in an action based upon a violation of the
21   TCPA, Plaintiff may seek an injunction precluding future violations.

22   40.    As alleged above, Defendants have violated the TCPA.  Their past conduct in
23   doing so demonstrates that it is necessary for the Court to issue an injunction to prohibit
24   future violations of the TCPA.

25   41.    Accordingly, Plaintiff requests that the Court enter an order permanently
26   enjoining Defendants and all those acting on their behalf from sending unauthorized text
27   messages in violation of the TCPA.

28

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for relief as follows:

1.    For the actual monetary loss incurred by him and the class or $500 per violation, whichever is greater;

2.    For an order permanently enjoining Defendants and all those acting on their behalf from sending unauthorized text messages in violation of the TCPA.

3.    For an order certifying the class as defined above;

4.    For reasonable attorney's fees and costs

5.    For such other and further relief as the Court deems just and proper.

Dated: December 26, 2012                              GARTENBERG GELFAND HAYTON
                                                                          & SELDEN LLP


                                                                          _____
                                                                          Aaron C. Gundzik
                                                                          Attorneys for Plaintiff

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury.

Dated: December 26, 2012

GARTENBERG GELFAND HAYTON
& SELDEN LLP

Aaron C. Gundzik
Attorneys for Plaintiff